Good morning, your honors, and may it please the court, I am Brandi Robinson of the Federal Defender Office of the Eastern District of Michigan, and I am appearing on behalf of the defendant. I'm having a hard time hearing, is the microphones turned on? We can check that, your honor. Could be just me. Well, I am too. Okay. I am too. I'll try to speak louder. May it please the court, Brandi Robinson of the Federal Defender Office of the Eastern District of Michigan. I'm appearing on behalf of the appellant, John Robert Kennedy. I would like to reserve two minutes for rebuttal. This case sheds light on two of the most basic tenets of our American system of criminal justice. The first is that we don't convict people based on who they are, or the fact that they have a horrible past, or that in our judgment we think they are immoral people. Our social contract is that you answer for the crimes that are charged against you, and you are required to respond to those specific allegations. A second principle that's fundamental and has been implicated in this case is that we only take away your liberty if you have a jury who has been adequately advised of the facts and is given a clear and accurate understanding of what the law is. The reason we're here this morning is because it is our position that neither of those principles were honored in Mr. Kennedy's trial. As to the first point, the government here admitted an incredible amount of 404B evidence that had very little to do with the charged crime. Let me ask you about that, because if there's one little evidence that has been all over the map, it's 404B evidence, but your defense counsel says the only issue is going to be whether he made a destructive device. He admits all the elements that we stipulated to, he's already pled guilty to possessions of chemicals relating to this case. And that's what the 404B evidence was, wasn't it? The chemicals and things? Hasn't he already told the jury about it? Your Honor, so yes, the defense position below was that this was a very, very narrow issue for the jury. But he also admits to the jury when he's talking to them that he's pled guilty to the possession of the chemicals and those things that make the bomb. So where's the error by introducing those things, since he's already stipulated to it? Well, it's our position that the sheer volume and the nature of the evidence that was admitted by the government really far exceeded the scope, even of the crimes that he had pled guilty to. And frankly, those charges weren't really before the jury for consideration. The fact that he had accepted responsibility was certainly probative, but... No, I didn't say it was probative. But counsel admits and stipulates to those things. So I'm just saying it seems to me that weakens your 404B evidence argument quite a bit. Well, I would disagree, Your Honor. The reason for that is that this was a case that involved an assembled device. It was already put together in a way, and according to the government's theory, it had performed in the way it was intended to perform. And so really the only question before this jury was the one of intent. And so to your point, if everything else really technically wasn't at issue in the case, then there really was no need for the government to proceed with the evidence. Well, I guess I misunderstood that, too. I thought he stipulated everything but, is this device I made a destructive device? And you also said there's an intent issue in this, too. So if there's intent, that's an exception to the 404B. Well, Your Honor, the DelPiaz case that is cited in our brief is really central to resolving the relevance of intent in this context. And it takes me back to my initial point that this was an assembled device. It wasn't a device that involved component parts. So say a defendant who had been stopped and found with a bottle of gasoline and a rag and some sort of bottle that would have contained it. This was a device that... What was the intent issue? So we believe that under DelPiaz, intent was not relevant at all to the analysis of whether the device was destructive as a matter of law. But you just said intent was an issue. No, it's our position. I'm sorry. If that is the impression that I gave, I misspoke. It is the defense position that intent is not relevant to the narrow issue that was before the jury in this trial. The sole thing that we asked the jury to focus on was whether, based on the objective and physical design of this device, whether it was destructive as a matter of law. So you're saying that you admitted that whatever he made, he intended to make. There's no question that he thought he was making one thing and he made something else. That you took responsibility for whatever it was that he made and the only question for the jury was whether what he made was a destructive device. That is correct, Your Honor. And so as to the question of intent, DelPiaz specifically says when you're dealing with a case that involves component... When you're dealing with a device that is already a civil, the question of the defendant's subjective intent does not matter at all. And this is important because intent was one of the reasons that the government, at least intimated in its pleadings, that all of this 404B evidence was relevant. Did you have this conversation, not you, did your trial counsel have this conversation before the instructions? Because the court instructed both on an assembled device and components, right? That is correct. And I know you're saying that that doesn't solve the problem, but I'm just wondering if counsel had this dialogue with the court. So what happened below was that there was a... The defense presented a proposed jury instruction that really tried to winnow the issues down pretty narrowly to what was really at play in this case. And so under the defense proposal, the instruction would have simply read, this device in order to be destructive has to be an explosive bomb. It would have taken all of these other options under the statute off the table. It also would have removed the language in subsection F3 relating to the fact that a device could also be assembled from component parts. The way that this case was prosecuted below was obviously always as an F1 case, and the government never once deviated from that theory. From the very beginning, their theory was this is an explosive bomb. They made that argument in several different places. And so based on those representations by the government, the defense proposed an instruction that really narrowed things down. When the discussion happened on the record, it was before the jury had actually been charged. And it was clear that the court was not going to accept the defense proffered instruction. And so what the court had presented to the parties was basically these alternatives that also included the F3 language. And there was some agreement between the government and the defense that if that was going to be the version that went back to the jury, they certainly needed to be consistent. Because obviously in this instance, the definition of destructive device was relevant to a number of different charges that the defendant had faced. And so it should have been a consistent charge, but it was far from that. As I've indicated in my brief, the way that the court presented the instruction in one part made it such that it gave the jury basically a choice of eight or nine different items that the device could be, but it didn't require that they all be either an explosive bomb or an explosive missile or an explosive grenade. The language, explosive, incendiary, and so forth, it didn't qualify all of the remaining elements. And they had the jury instructions in writing? They did have a copy of the instructions in writing. And why is it not harmless, that particular error, under the circumstance that they convicted of the properly instructed offense that has the same elements as the one that may have been confusing? Well, in a test of harmlessness, I think we do have to look at whether we can say with fair assurance that the error did not contribute to the outcome. In this particular analysis, I just think the fact that, well, first of all, the jury returned a guilty verdict on all the counts. And so we don't have any reason to believe or any indication from the record that they applied the properly given test as opposed to the improperly given one. There's nothing here to indicate that, and I think that's part of our point. This was not a case where the information at dispute was really readily available to the average lay person. This was a technically specific case, and it involved some things that are just beyond common knowledge. And so in that kind of instance, I think it's more important than ever to make sure that the jury has a clear charge, and the inaccurate charge that they were given just made their burden a lot easier. So there's no reason to believe that they used the properly given instruction as opposed to the improperly given instruction. Frankly, I think there's reason logically to believe that they would have used the easier to apply instruction. And so without knowing specifically which one they relied on, I don't think that we can safely say that this error was harmless. And do you want to say anything about the sentencing? I was going to restrict my arguments to the 404B unless the court has specific questions about sentencing. I do just want to point out that we didn't – there were – the evidence on the 404B we think was significantly prejudicial for a number of reasons. It was in many ways more damning than the evidence that was actually pertinent at trial. I mean, this involved a box, basically, of white cardboard bikes that was set outside of a parking lot of a hardware store at the time of closing, and really whether or not that device itself was destructive. In terms of the 404B evidence, it was just really, frankly, over the top. I mean, there were – the anarchist cookbook – I mean, there's a number of documents that we cited in the record, a number of writings, I would say easily 15 or more different writings that suggested that the defendant had subversive and terrorist leanings, that he was anti-government. I thought this was offensive personally, but they even pointed to the fact that he had applied for Iranian citizenship and thought that was evidence that he was, in fact, involved in or interested in terrorist activities. They made a reference to him being sort of the next mastermind of Columbine during closing. I mean, this really was salacious and I think would trigger an emotional response from the jury. And it's highlighted by the fact that there were less prejudicial means available to show intent if intent was, in fact, relevant. They had the testimony from his cousin that suggested that he had talked to him about the fact that he had the ability to make explosives and that he could, with the flip of a switch, blow the house up that he was in. So, I mean, if they wanted to present that evidence, there was certainly other ways for them to present it. And so, we think that the 403 analysis certainly weighs in favor of reversal. I would like to stop talking so that I can reserve my rebuttal time, but thank you. Certainly. Thank you. Good morning. May it please the court, Stephanie Hayes for the United States. John Kennedy made a bomb, wired it for delayed detonation, and placed it in a strip mall where it exploded. Let's take where she left off. Why was all this evidence put in this so-called 404B when it was stipulated that the only issue is whether this bomb was explosive or not, or this device was explosive?  I have two responses, Your Honor. The first is that the government's response to the motion in Limine did not concede that it was all 404B. In fact, the prosecutor described that most of it was actually intrinsic or- I'm sorry. Would you speak up, please? Sure. That it was intrinsic or directly relevant to proving the government's case. And the second- What was the relevance of it? Sure. So, for example- That he had anti-government literature. That's not relevant, Your Honor. For example, I think my colleague is referring to the Turner Diaries, which was admitted it's a novel about- I guess it's an anti-government novel. I'm not familiar with the contents. So, why was it put in? It was put in- It wasn't- Let me explain it this way. It was admitted, but not used by the prosecutor. It was admitted on the fifth day of trial without comment. I think- It wasn't actually identified. It was- Exactly. It was identified as the Turner Diaries. And I think what happened there, Your Honor, was that the prosecutor was admitting it as part of a sort of unfocused, matter-of-fact admission of essentially everything that was And so, it was unfocused and unthoughtful, but it wasn't used. It wasn't mentioned in the closing. It wasn't- But it was available for the jury to look at? It was. And the jury did not request to see any of the exhibits, including the Turner Diaries. You know, what was the- I have a little trouble with the 404B evidence. Sure. So, tell me what it was put in for. Well- I mean- Sure. But the fact that he had the makings of the bomb, does that prove he made the bomb? Yes. Or made it to be an explosive bomb? Yes, Your Honor. That's why it's not 404B. I think what it really is, is it's showing that he made the bomb, an element of an offense that the government had to prove beyond all doubt. How? How? So- He made the device. He doesn't argue that. He just says it's not an explosive device. Well, yes. And that's one thing I want to clear up with you, Your Honor. I think you referred to it as a stipulation. There was no stipulation. Well- There was no stipulation that he made it. Well, let me read to you what he said. Sure. Sounds like a stipulation to me. I mean- You're referring to opening statement of counsel? Hmm? You're referring to counsel's opening statement, which is not a stipulation. And even if it was- Well, he made it in his opening statement. He's bound by it, isn't he? Yeah. I understand my colleague cites a civil case that says that. I don't think that any court would say that it relieves the government of its responsibility to prove every element in a criminal case beyond a reasonable doubt. In fact, Old Chief says that it doesn't. And that even when a stipulation is offered by a defendant, that that does not relieve the government of its burden to prove every element beyond a reasonable doubt or deprive it of its ability to prove its case. What Old Chief did was it carved out an exception for felon status. And so I think that case is very helpful in showing that even if there had been a stipulation, which there wasn't in this case, the government was still burdened to prove beyond a reasonable doubt that he made the bomb, that he possessed the bomb. And I cite a case in the government's brief that we also had to show his knowledge that the device had the features that brought it within NFA regulation. There's just a Supreme Court case that requires that of the government. So the defendant did not admit that he made this device? Correct. There were stipulations entered. They had nothing to do with those elements. They had to do with interstate nexus, his prior felony. So of course, we didn't touch that. The prosecutor in this case did not even attempt to offer the fact that he had a prior conviction for the same offense, being a felon in possession of explosives. Here's what he says in his opening statement, and I, at least when I was making the big money on your side of the aisle, I on a couple of occasions stipulated that my, I used to damages. So that alleviated the plaintiff of any proof in that regard. And that was by my opening statement, it's done all the time. And he says here, the only issue is going to be whether this was a destructive device. That's the only issue. He admits to making it. He admits to putting it there. He admits to all the elements that were stipulated to. He's already pled guilty to possession of chemicals related to this case that he wasn't supposed to have. And then he says he wasn't a choir boy, but the question is whether this device at ACO is a destructive device. So what's all that evidence in for? To show that he, to show his identity, to show he made the device, to show that he. Okay. So let's say that the, let's say the opening statement isn't enough. Doesn't the trial court still have an obligation to weigh probative value and prejudice effect? Yes. And how much probative value is there for evidence that's already admitted? I mean, for evidence that bears on an issue that's uncontested. I mean, that's very little probative value, right? And then the prejudicial effect is just overwhelming. Instead of being a trial about what was this, a destructive device or intended to be a weapon, you have all this stuff about that this guy makes bombs and this guy has intentions and this guy's a bad guy. Yeah. I think, Judge White, I think one, I think a way to answer that is to talk about a question you asked my colleague, which was whether or not he had conceded that he had made this device and the question is whether just it's technically destructive, but it's, he, I think you asked my colleague, he wasn't, he did concede this in such a way that he wasn't saying it was a mistake, that he accidentally made something that became a bomb, right? And that's, and I think my colleague said, oh yeah, yeah, but that's not right. The whole defense was that he had made a smoke mix. So his intent as the maker of that bomb, that's what distinguishes Dalpiaz from being completely irrelevant for this case. In Dalpiaz, the defendant had purchased a commercially available device and even in that scenario, this court in Dalpiaz did consider the intent and design of the device just from the commercial manufacturer's perspective. The government witness said, this is meant to be a training device, not a weapon. And so this court said, well, in light of the evidence that was admitted at trial, I think it's a terrible case for the government. It sustained the affirmative defense for the defendant, though, our own witness in that case. And this court held in Dalpiaz that the mere user's intent was irrelevant. Here, Kennedy made the bomb and the whole defense that he offered was, it's a smoke mix, like a firework or something like that, and not an explosive device. I could see how this would be an issue if his defense had introduced the smoke bomb at the school and said, look, this guy makes smoke devices and that's what this was. It was just like the one at the school. This is what he does. You come in and you go, no, that's not what he does. He has all this other stuff that you don't use for that, and look at all the other evidence that wasn't his intent. But that's not the way they defended it. At best, we know from all of this other evidence that he makes smoke devices and he has other things. He has the capability to make explosive devices. But the real issue is, what was this device? And it doesn't, and some of the evidence went to that, but that evidence gets obscured when you look at all the other evidence. And that's where I'd like to disagree with you, Judge White. And I think it's because my colleague did such a great job in her brief that it appears that it was the bulk of the trial and that it obscures all the relevant admissible evidence. So what I did in preparation for this argument is I went and I tried to count the pages in which this evidence appears. And I think what might be helpful when we look at the harmless argument here is the government's case lasted five days, or six days of trial total. Of the five days that the government put on its case, we have 568 transcript pages. And of the things that I cannot justify, I cannot defend, Turner Diaries, testimony about the 2004 application for Iranian citizenship, those types of items, they appear on eight pages out of the 568. They appear towards the end of the trial on the fifth day. I think, frankly, I don't think the trial attorney would be upset with me if I said that I think she was fatigued and unfocused. I don't think she was being thoughtful, but I don't think she was being nefarious. I don't think she was trying to, certainly she wouldn't want me to be here. Isn't the question what is the effect on the jury? Yes. Yes. Yes. And I think here, that's where the fact that it was admitted kind of without being used is helpful. If we look at the prosecutor's closing argument, she doesn't go back to the Turner Diaries. She doesn't go back to the 2004 application. What did she say about Columbine? There she makes a brief cursory remark at the beginning of her closing where she says something about, she's referring the testimony of the principal, the Trenton High School principal, where he says that he was worried about another Columbine type incident. That's how it comes up. And I would say, look, that was improper, but it wasn't flagrant, and the way we can tell it's not flagrant, even on this cold record, is that there was no objection from defense counsel, that if we look at what the prosecutor went on to say in her closing, I think the high school Trenton concern about children being in high school and being threatened by bombs, which is not good. That took 13 lines of her entire closing. It was a paragraph. And if you look at the rest of her closing, she's addressing the issue. She says, and I'd like to quote it because I'd like to show you what she was really trying to focus on here. She says, really, there's just two things for you to decide back in the jury room. One, that the device was made by the defendant, was a destructive device, and two, that the device was designed as a weapon. That's at 1160. And defense counsel, when she gets up in her closing, she compliments the government on the framing of the case. I think she says something like, the government told you exactly right about what this case is about, and that's at page 1174. So I can't say that this is a perfect trial, but I do think it was a fair one, in light of the fact that the irrelevant evidence was not the focus, and that the admissible evidence against the defendant was overwhelming. We have the plans for the bombs in his diaries, the map of the bomb site with a hand-drawn escape route, and the tools and the materials to make the bomb in his house, and Kennedy's position on appeal is that even that shouldn't have come in. I mean, it's a really kind of startlingly broad conception of what a defendant could keep out and away from a jury in a case just by saying something in an opening statement, which by the way, the district court advised the jury that that's not evidence, that an argument by a lawyer is not evidence. Could the defendant have actually stipulated in a formal way to these elements and then precluded the government from introducing this testimony? No, I don't believe so, Your Honor, not under Old Chief. Again, we think of Old Chief as being one that stands for the proposition that you can stip away the government's ability to prove its case, but that's actually not, Old Chief is very clear that the government is still entitled and burdened with proving its case. It just carves out an exception for felon status, because really, the court said under 403, there's just no reason to bring up the details of someone's felon status in a FIP case. Was there any effort to ask the judge for limiting instructions vis-a-vis the 404b? Yes, Your Honor, there is, and I believe it's at page 1205 that the instruction's given without objection from the defense. The limiting instruction? Yes. And what does it limit it to? Is it limiting to the 404b evidence to be considered for what items? I apologize, I don't have that in front of me, but I do believe it's at 1205 in the transcript, but I believe that was jointly submitted by both parties, whatever it is that it says. I want to also point, one thing that I think we are in agreement on, even on appeal, my colleague and I, is that the expert testimony was very important here. Four experts testified, two for the government and two for the defendant, and three of them, meaning one of his own experts, said that this was a destructive device, which I think is also very important for the harmlessness argument. The fourth couldn't say what it was, he just thought it could either be a smoke mix or a destructive device. And Kennedy's own cousin testified that shortly before the explosion, that he had seen all have been talking about making bombs, not smoke mixes. So I think all of that, in light of all of that, also the sophistication of the device, I mean the jury was entitled to find that it was a bomb and not a smoke mix, when you've got wires, watches, delayed timers, epoxy, soldering, there was non-expert evidence of an explosion. We had the shocked customer who described it as an explosion, as well as the eyewitness who could smell sulfur in a pillar of smoke. And what about the sentencing? Yes, is there a specific concern that you have, Judge White, about the sentencing? I have two. The enhancement for the robbery, I mean, what's the evidence that there was a robbery? There isn't. There's not evidence that there was a completed robbery. There's evidence that he planned to rob that jewelry store, which was right next to the hardware store. He actually, in addition to having the Google map with the escape route drawn on it, there was also, he sketched out like a diagram, almost like a floor plan of the jewelry store and the Ace Hardware store. His journals also included not only his kind of chemical and physical mixes, but- I don't think there's any question that he thought about a robbery. Right. But what is the evidence that there was some sort of, that this was in connection with an offense, as opposed to some thing he was thinking about?  And I guess here, Your Honor, I'd point you to page, I think it's 35 of the government's brief, where I think there's both a case as well as the guidelines say that the robbery or the other offense does not have to be completed. It just needs to have the potential of facilitating. And I think there was a lot of evidence that showed it was intended to facilitate the dinner night out, which is his code name for the jewelry store heist, was right there in the same journals with the bomb recipe. Did the district judge explain why he was denying the downward variance? The double counting? No. And I understand that Robertson's not very good for us on this point. I think the one, and I'm not going to fight you hard on remand, but I do think that one thing that distinguishes this case perhaps from Robertson, is that in Robertson, this court, or yeah, I think it was a published decision, this court found not only did the district court fail to address the double counting argument, it also found that the record indicated that the district judge hadn't really understood it. And I think here, I do think we can find from the record that the district court understood the argument because I think initially Kennedy's trial counsel was a little unclear about what she was getting at, and the district court invited her to come back to that point because he didn't really get it. And then she, from the record, I think it's very clear what she's arguing about the double counting. And so that I think would distinguish it from Robertson. Thank you. Okay. Thank you so much. So without any other questions, the United States would ask that you affirm the convictions in the sentence. Thank you. Sir. He's coming around this way. Thank you. Thank you. Your Honor, I just want to respond to a couple of things that the government pointed out. First of all, I want to clarify that the expert testimony that was given about the advice, the device being destructive, it is true that in response to a question from the prosecutor, the expert answered affirmatively, well, doesn't that mean that it qualifies as a destructive device? But on cross-examination, counsel got back up and posed the question again, and the expert was able to clarify, I think this device is an incendiary, but the simple fact that it is an incendiary does not mean that it was an incendiary bomb. And both are required under the definition of destructive device. And that frankly dovetails with the instructional error that we claim. It was not sufficient for the device to be an explosive on its own or an incendiary or anything else. It had to be an incendiary bomb or an explosive bomb. And there wasn't overwhelming evidence on that point. Our expert, again, did not necessarily think it was an explosive bomb or an incendiary bomb for that matter and offered testimony to that effect. The other expert also talked about the fact that this item wasn't designed for use of a weapon because it didn't have a pressurized container that was sufficient for it to explode. And when you look at the evidence of what was left afterwards, there really wasn't much damage to the premises. There were some wood chips that were displaced, there was some charring, but there was no large-scale explosion that happened. And frankly, the government's expert suggested that maybe what had happened is that the cardboard box that contained the device had somehow been consumed in the explosion. And I think there was plenty of evidence in the record from which the jury could have found that an implausible contention. But isn't that just an argument between the experts up to the jury to decide who they want to believe and what they want to believe? I do think that's correct, but that's exactly why the error here is not harmless. There was not overwhelming evidence of guilt on this key question of whether or not the device was destructive. And so to the extent you had competing information available to the jury, they could have found the other way. The evidence, in our opinion, was not overwhelming on this point. I see my time. Could you address the question of the limiting instruction? I found the reference on page 1205. Apparently, the district judge instructed the jury, if you find the defendant did those crimes, acts, wrongs, you can consider the evidence only as it relates to the government's claim on the defendant's opportunity, preparation, plan, knowledge, and identity. You must not consider it for any other purpose. Did your trial counsel agree to that limiting instruction, and does it cure the problem? I do think counsel, by not objecting, and certainly by reviewing the instructions in advance of them being submitted to the jury, agreed to that limiting instruction. I don't think the limiting instruction, frankly, was sufficient to wave, or excuse me, to cure the error here. As has been discussed, first of all, the limiting instruction is not always a ready fix, especially when you're dealing with evidence before a lay jury that is this inflammatory. I think this is one of those cases where you can't presume that just because the jury was told to limit their analysis to a few permissible purposes that they were able to do so, particularly where the theory wasn't really borne out all that well by the government in its arguments below. Thank you. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the roll?